NEW YORK PRACTICE REPORTS.                    **91**

Schiff agt. New York Central and Hudson River R. R. Co.

# SUPREME COURT.

SCHIFF and another agt. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Common carriers — verbal agreement — not merged in bill of lading — power to limit their liability.*

Where goods are shipped under a verbal agreement for their transportation, such agreement is not merged in a bill of lading, which is partly written and partly printed, delivered to the shipper after he has parted with the control of his goods, notwithstanding such bill of lading, by its terms, limits the liability of the carrier, and expresses, on its face, that by accepting it the shipper agrees to its conditions. The mere receipt of the bill, after the verbal agreement had been acted upon, is not sufficient to conclude him from showing what the actual agreement was, under which the goods had been shipped.

When the contract for transportation is over the lines of several distinct and independent companies, it is perfectly competent for those companies to limit their liability by contract as expressed in the bill of lading.

Where a bill of lading contained a provision in substance that no connecting carrier should be held liable for any loss or damage to goods, except what occurred on its own route, and it was shown, by proof, that the damage occurred after the defendants had delivered the goods safely, and in good time, order and condition to a connecting company or carrier, any right of action which may have accrued to the plaintiff does not exist against the defendants.

*Special Term, April,* 1876.

*T. R. Shearman,* for plaintiffs.

*Frank Loomis,* for defendants.

LAWRENCE, J. — The evidence appears to me to establish that the agreement, between the plaintiff Clarke and Cross,

representing the Red Line, was that the goods should be sent in a refrigerator car through to St. Louis.

Nor do I think that the plaintiffs were precluded, by the receipt of a bill of lading in which this provision was omitted, from insisting upon the agreement, as made verbally between Clarke and Cross. The evidence establishes that shortly after the young man Wardell came back to the plaintiffs' office, one of the plaintiffs saw Cross and asked him why "they did not put in the words 'refrigerator car through,' &c., and he (Cross) said he did not like to put that in; it did not make a particle of difference, the car would go through all right; they had telegraphed to have it go, and I need not worry a particle." Clarke further testifies that it was between five and six o'clock when they received the bill of lading and after the goods were shipped, and that it was too late to see anybody or to do any thing about it, because the train went out at half-past five o'clock. The verbal agreement was not, therefore, merged in the bill of lading (*See Bostwick* agt. *Balt. & Ohio R. R. Co.*, 45 *N. Y.*, 712).

The contract then being that the goods be sent in a refrigerator car through to St. Louis, the question is, are the defendants liable upon the facts proven, for the neglect or failure to transport the goods in such a car.

The contract was for transportation over the lines of several distinct and independent companies, and the bill of lading provides that the responsibility of these companies is to terminate on the delivery of the freight, as per this bill of lading, to the company whose line may be considered a part of the route to the place of destination of said goods or packages.

The Red Line, over which these goods were to be carried, being made of several different companies, it was perfectly competent for those companies to limit their liability by contract as expressed in the bill of lading (*Rickerts* agt. *B. & O. R. R. Co.*, 59 *N. Y.*, 637; *Belger* agt. *Dinsmore*, 51 *id.*, 166; *N. J., &c., Nav. Co.* agt. *Merchants' Bank*, 6 *How.*

[*U. S.*], 384; *Dow* agt. *N. J. S. Nav. Co.*, 1 *Ker.*, 485; *Nicholas* agt. *N. Y. C. and H. R. R. Co.*, 4 *Hun*, 329).

It is not pretended that the goods were not safely carried by the defendants over their route in a refrigerator car, nor that they were not delivered by the defendants to the Lake Shore and Michigan Southern Railroad Company, the next line, in good time and in good order and condition.

The court of appeals held, in *Rickerts* agt. *The Balt. and Ohio R. R. Co.* (59 *N. Y.*, 637), that where a bill of lading contained a provision, in substance, that no connecting carrier should be held liable for any loss or damage to goods except what occurred on its own route, the defendants were not more liable if the loss occurred on the route of any other railroad than that through whose negligence the injury arose.

I am, therefore, of the opinion, as the default alleged occurred upon one of the roads which took possession of the plaintiff's goods after the defendants had carried said goods over their own route safely and in good time, order and condition, and had delivered them to the next continuing line, any right of action which may have accrued to the plaintiffs does not exist against the defendants.

I have examined the numerous cases cited by the learned counsel for the plaintiffs in his elaborate brief, but more of them appear to me to decide that under such a bill of lading as I have had under consideration in this case, a company which has safely transferred goods delivered to it over its own route and transferred them to the next continuing line is liable for any injuries which may happen the goods at a subsequent period in their transportation.

There must, therefore, be judgment dismissing the complaint with costs to the defendants.

Findings may be settled on two days' notice.